# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, A.Y. MARKS, T.H. CAMPBELL**
**Appellate Military Judges**

**IN RE:**

**UNITED STATES**

**v.**

**LIEUTENANT (O-3) DWIGHT D. ROBERTS, U.S. NAVY**

**NMCCA 201600119**
**Review of Petition for Extraordinary Relief in the Nature of a**
**Writ of *Mandamus***

**Military Judge:** CAPT Bethany L. Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southwest, San Diego, CA.
**For Petitioner:** LCDR Justin C. Henderson, JAGC, USN; LT James M. Belforti, JAGC, USN.
**For Respondent:** LT Ryan W. Aikin, JAGC, USN.

**28 June 2016**

---------------------------------------------------
**PUBLISHED OPINION OF THE COURT**
---------------------------------------------------

BRUBAKER, Chief Judge:

The United States petitions this court for extraordinary relief in the nature of a writ of *mandamus*. It seeks relief from a lower court ruling finding evidence of general military character admissible, directly at odds with the recently-amended MILITARY RULE OF EVIDENCE 404, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). We find the Government has met its burden to demonstrate that extraordinary relief is warranted and thus grant the writ.

## BACKGROUND

On 14 January 2016, Lieutenant (LT) Roberts, the Real Party in Interest, was arraigned at a general court-martial on two sexual assault specifications for acts alleged to have occurred on or about 3 August 2014, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. Between those dates, on 17 June 2015, the President signed Executive Order 13696,[1] which implements a

---
[1] 80 Fed. Reg. 35,783 (June 17, 2015).

Congressionally-directed amendment to Military Rule of Evidence (MRE) 404(a).[2] Leaving intact the general rule that character evidence is inadmissible to prove that a person acted in conformity with a character or trait, the amendment modified the exception of MRE 404(a)(2)(A) as follows:

(A)  The accused may offer evidence of the accused's pertinent trait and, if the evidence is admitted, the prosecution may offer evidence to rebut it.  General military character is not a pertinent trait for the purposes of showing the probability of innocence of the accused for the following offenses under the UCMJ:

(i)  Articles 120-123a;

(ii)  Articles 125-127;

(iii)  Articles 129-132;

(iv)  Any other offense in which evidence of general military character of the accused is not relevant to any element of an offense for which the accused has been charged; or

(v)  An attempt or conspiracy to commit one of the above offenses.[3]

LT Roberts argued in a pretrial motion that this new evidentiary rule violates the *Ex Post Facto* Clause of the U.S. Constitution and that, pursuant to the old rule, evidence of general military character should be admissible during the merits phase of his trial.  Over Government opposition, the military judge orally granted the motion based on the rule change having occurred after the alleged offenses, a decision she described as "consistent with rulings in other cases in my courtroom."[4]  She conceded that had the alleged offense been committed after the President signed the Executive Order, "this might be a different situation."[5]

After this Court docketed the case and issued a stay of proceedings, the military judge issued a written ruling.  It explains her rationale for finding an *ex post facto* violation, and further finds that the new rule, by the terms of the Executive Order, does not apply to this case.

**ANALYSIS**

*Jurisdiction*

The All Writs Act empowers this court "to issue all writs necessary or appropriate in aid of [our] jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); *see United States v. Denedo*, 556 U.S. 904, 911-12 (2009).  The Act, however, is not "an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction."  *LRM v. Kastenberg*, 72 M.J. 364, 367

---

[2] *See* Carl Levin and Howard P. Buck McKeon National Defense Authorization Act for Fiscal Year 2015 (FY-15 NDAA), Pub. L. No. 113-291, § 536 (Dec. 19, 2014).

[3] 80 Fed. Reg. at 35,818.

[4] Extraordinary Writ by the United States Docketing Notice of 4 Apr 2016, Appendix H at 6.

[5] *Id.*

2

(C.A.A.F. 2013) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). It instead requires two determinations: (1) that the requested writ is "in aid of" the court's existing jurisdiction; and (2) that the requested writ is "necessary or appropriate." *Id.* (citation and internal quotation marks omitted).

"'[I]n aid of' includes cases where a petitioner seeks 'to modify an action that was taken within the subject matter jurisdiction of the military justice system.'" *Id.* at 368 (quoting *Denedo*, 66 M.J. at 120). "To establish subject-matter jurisdiction, the harm alleged must have had the potential to directly affect the findings and sentence." *Id.* (citations and internal quotation marks omitted).

This framework establishes our jurisdiction over the United States' petition. The United States is no "stranger[] to the court-martial, asking for relief . . . that has no bearing on any findings and sentence that may eventually be adjudged by the court-martial." *Ctr. for Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F. 2013). Rather, it is a party to the court-martial below challenging admission of evidence——evidence that has every bit as much potential to directly affect the findings and sentence as did the evidence at issue in *Kastenberg*. 72 M.J. at 367-68 (holding that the court of criminal appeals erred by finding that it did not have subject-matter jurisdiction).

The United States' lack of recourse under Article 62, UCMJ, does not change this analysis. Article 62 grants the United States the ability to directly appeal enumerated interlocutory matters. Both parties agree that the ruling below falls into none of those categories and that Article 62 thus does not apply. But as we have said before, a lack of jurisdiction under Article 62 does not limit our jurisdiction under the All Writs Act and Article 66. *United States v. Booker*, 72 M.J. 787, 796 (N.M.Ct.Crim.App. 2013) *appeal denied sub nom. United States v. Schaleger*, 73 M.J. 92 (C.A.A.F. 2013). Being in the extraordinary writ realm rather than direct appeal does, however, have a significant impact on the standards we apply to the merits of the matter—which moves us to the second prong of our analysis.

*Necessary or Appropriate*

A writ of *mandamus* is "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted). The writ has traditionally been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943) (citations omitted). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power" justify the invocation of the writ. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) (citation and internal quotation marks omitted).

To prevail, a petitioner seeking an extraordinary writ must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81, (2004)). We consider each of these requirements in turn.

   1.   Other Means of Relief. As both parties agree, issuance of a writ of *mandamus* is the only means of relief available to the United States here.

   2.   Whether Right to Issuance is Clear and Indisputable. Despite the plain language of MRE 404(a), the military judge ruled evidence of general military character admissible because under the

terms of the Executive Order implementing the new rule, it does not apply to this trial, and, if it did, there would be an *ex post facto* violation. We find these rationales for avoiding the strictures of MRE 404(a) are based on incorrect interpretations of the law and contrary to well-established precedent.

a. Effective Date

In promulgating Executive Order 13696, the President stated that the amendments are effective the date of signing—17 June 2015—and that:

> Nothing in these amendments shall be construed to invalidate any . . . investigation, referral of charges, trial in which arraignment occurred, or other action begun prior to the date of this order, and any such . . . investigation, referral of charges, trial, or other action may proceed in the same manner and with the same effect as if these amendments had not been prescribed.[6]

As the *criminal investigation* in this case began before the effective date of the amendment, the military judge reads the Executive Order as directing that *trial* proceed under the old MRE 404.[7] But this misreads both the plain language of the Executive Order and applicable precedent. Our superior court, interpreting similar language in an Executive Order, held that it "divided military procedure in several phases," and "that if one divisible step had been completed under previous regulations, it was valid and effective." *United States v. Nichols*, 6 C.M.R. 27, 32 (C.M.A. 1952). It explained:

> Stated particularly, if an investigation has been held, that step has been taken and the new system shall not invalidate that much of the proceeding nor require that the offense be re-investigated; that if a trial has reached the point of arraignment, it shall be completed under the old procedure without interference by the new . . . . In a sense, the President set a cut-off date and he declared that acts accomplished or steps taken prior to that time were validated. He further declared that after the cut-off date *the new procedure was to be controlling on those steps which had not been commenced prior to that date*. . . . The result of these provisions, we believe, is to separate the court-martial process . . . into successive phases or principal steps, and to permit the completion with the old system's finality of any phase initially undertaken prior to the effective date of the Act on which the new procedure is based. However, as to stages not begun by this date, the provisions of the new scheme are to apply. . . .

*Id.* (emphasis altered) (citations and internal quotation marks omitted).

Thus, under the terms of Executive Order 13696, the MRE 404 revisions clearly and indisputably apply to trials in which the appellant was arraigned on or after 17 June 2015.

---

[6] 80 Fed. Reg. at 35,783.

[7] Preferral and the Article 32, UCMJ, preliminary hearing—formerly referred to as "investigation"—occurred *after* the amendment.

4

b. *Ex Post Facto*

LT Roberts argues that application of the revised MRE 404 to him violates the Constitutional prohibition against *ex post facto* laws. U.S. Const., art. I, §§ 9, 10. We disagree.

In the seminal *ex post facto* case—*Calder v. Bull*—Justice Chase explained that this provision means that legislatures:

> shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it. The prohibition considered in this light, is an additional bulwark in favour of the personal security of the subject, to protect his person from punishment by legislative acts, having a retrospective operation.

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).

Justice Chase then enumerated the enduring four categories of laws that violate the *Ex Post Facto* Clause: (1) a law that criminalizes acts that were not criminal at the time they were committed; (2) a law that aggravates a crime or makes it greater than it was at the time it was committed; (3) a law that imposes additional punishment for a crime that would have not been so punished at the time committed; or, (4) changes to the rules of evidence that require less or different evidence to convict than would have been required at the time the act was committed. *Id. See also Carmell v. Texas*, 529 U.S. 513, 522 (2000).

The Supreme Court has since made it clear that the prohibition of "'*ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.'" *Dobbert v. Florida,* 432 U.S. 282, 293 (1977) (quoting *Gibson* v. *Mississippi,* 162 U.S. 565, 590 (1896)). It has, instead, consistently hewed closely to *Calder*'s holding that a change to the rules of evidence—even when to the disadvantage of defendants—is *ex post facto* only if it reduces the *amount or the quality of evidence required to convict an offender. See, e.g., Carmell*, 529 U.S. at 532 (characterizing the fourth category of prohibited *ex post facto* laws as those "reducing the quantum of evidence necessary" to convict an offender); *Dobbert*, 432 U.S. at 293 (listing cases).

*Hopt v. Utah*, 110 U.S. 574 (1884), provides an example. There, the Court found that broadening the rules of evidence to allow a convicted felon to testify against Hopt was not *ex post facto*, explaining:

> The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon ex post facto laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate

5

to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged.

*Id*. at 589-90. *See also Thompson v. Missouri*, 171 U.S. 380, 382, 386-87 (1898) (state statute allowing admission of exemplars into evidence for the purpose of authenticating defendant's handwriting was "not ex post facto when applied to prosecutions for crimes committed prior to its passage").

The Court's more recent decision in *Carmell* is also instructive. After some of Carmell's alleged criminal acts, Texas amended a statute to remove a requirement that certain-aged witnesses' testimony had to be corroborated, or there had to be a fresh complaint in order to convict the offender. *Carmell*, 529 U.S. at 516-18. The Court held that the statute fell into Justice Chase's fourth category of *ex post facto* law because it lowered the amount of evidence necessary to convict—that is, it was a "sufficiency of the evidence" rule, not a mere rule about the admissibility of evidence. *Id*. at 545-47. In making this distinction, the Court emphasized that:

[t]he issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained. Prosecutors may satisfy all the requirements of any number of witness competency rules, but this says absolutely nothing about whether they have introduced a quantum of evidence sufficient to convict the offender. Sufficiency of the evidence rules (by definition) do just that—they inform us whether the evidence introduced is sufficient to convict as a matter of law (which is not to say the jury *must* convict, but only that, as a matter of law, the case may be submitted to the jury and the jury may convict).

*Id.* at 546-47.

The Court closed by emphasizing the words of *Calder*'s fourth category—"every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender"—stating that:

 [t]he last six words are crucial. The relevant question is whether the law affects the quantum of evidence required *to convict;* a witness competency rule that (in certain instances at least) has the practical effect of telling us what evidence would result in *acquittal* does not really speak to *Calder*'s fourth category.

*Id*. at 551. It rebutted the dissent's argument, stating it:

rests on the assertion that sometimes a witness competency rule will result in acquittals in the same instances in which Article 38.07 would also demand an acquittal. That may be conceded, but it is only half the story—and, as just noted, not the most relevant half. The other half concerns what a witness competency rule has to say about the evidence "required . . . in order to convict the offender." The answer is, nothing at all.

6

*Id.* (quoting *Calder*, 3 U.S. at 390).

Likewise, the revised MRE 404(a) says "nothing at all" about the evidence required to convict an accused. It is a rule of admissibility, *not* a sufficiency of the evidence rule. As in *Hopt* and *Thompson*, the fact that the old rule could have led to acquittal makes no difference. *Id.*

Because the amendment changed neither the quantum nor the quality of evidence required to convict, its application to LT Roberts does not violate the *Ex Post Facto* Clause. *Cf. United States v. Hise*, 42 C.M.R. 195, 196 (C.M.A. 1970) (presaging the Supreme Court's analysis in *Carmell*: "In its consideration of this case, the Court of Military Review held that since the law relating to the independent evidence necessary to corroborate a confession or admission is merely a rule of evidence, the constitutional prohibition against *ex post facto* laws does not apply. This position, however, overlooks the fact that the rule of corroboration is more than a rule of admissibility. It is also a rule of the sufficiency of the evidence."); *Schroeder v. Tilton*, 493 F.3d 1083, 1087-88 (9th Cir. 2007)(finding no *ex post facto* violation for new rule admitting sexual propensity evidence against a defendant and noting that "*Carmell* distinguished ordinary rules of evidence, which govern admissibility or competency, for example, from those rules that affect the sufficiency of the evidence."); *United States v. Brooks*, 17 M.J. 584, 585-86 (A.C.M.R. 1983) (finding no *ex post facto* violation when MRE 412, promulgated between appellant's trial and rehearing, prohibited the accused from admitting evidence that would have been allowed at the original trial).

The military judge's ruling that the amended character evidence rule violates the *Ex Post Facto* Clause is contrary to firmly and long-established precedent. The United States is clearly and indisputably entitled to have this ruling set aside.

3. <u>Whether Issuance is Appropriate under the Circumstances.</u> Under the circumstances of this case, we find that issuance of a writ of *mandamus* is appropriate. First, it is based on an erroneous view of the law that is likely to recur. *See Labella,* 15 M.J. at 229. Indeed, the military judge concedes, and the Government has demonstrated, that it *has* recurred in her courtroom. Second, this is no ordinary evidentiary ruling unfavorable to the Government. It is a systemic declination—based on demonstrably invalid legal bases—to apply a new rule of evidence enacted through the combined efforts of Congress and the President. This presents extraordinary circumstances.

### CONCLUSION

The Petition for a Writ of *Mandamus* is, accordingly, granted. The military judge's ruling on LT Roberts' Motion for Appropriate Relief: *Ex Post Facto* Good Military Character is vacated. The record is returned to the Judge Advocate General of the Navy for remand to the military judge for action not inconsistent with this opinion.

Judge MARKS and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court