# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39018**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ralph G. MORALES**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 September 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to E-4. Sentence adjudged 13 November 2015 by GCM convened at Fairchild Air Force Base, Washington.

*For Appellant:* Kirk Sripinyo, Esquire (argued); Major Mark C. Bruegger, USAF.

*For Appellee:* Major Meredith L. Steer, USAF (argued); Colonel Katherine E. Oler, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of aggravated assault and two specifications of assault consummated by battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for four months, reduction to the grade of E-4, and a reprimand. With the exception of the reprimand, the convening authority approved the sentence as adjudged, but he waived the mandatory forfeiture of pay and allowances for the benefit of Appellant's dependent child.

Appellant raises three issues for our consideration on appeal: (1) whether the application of the executive order removing the "constitutionally required" exception from Military Rule of Evidence (Mil. R. Evid.) 513 was an abuse of discretion by the military judge or deprived Appellant of his rights to confrontation, compulsory process, or due process of law; (2) whether the military judge erroneously instructed the court members regarding the burden of proof;[2] and (3) whether the evidence is legally and factually sufficient to sustain Appellant's convictions.[3] Finding no relief is warranted, we affirm the findings and sentence.

## I. BACKGROUND

YM, the victim in this case, met Appellant in October 2008 at Fort Belvoir, Virginia, where YM worked as a recreation specialist.[4] At the time, Appellant was a member of the Air Force Honor Guard stationed at Bolling Air Force Base (AFB), District of Columbia. Appellant and YM began dating in January or February 2009 and were married in May 2011. In November 2011, their daughter was born. In early 2013, Appellant went to San Antonio, Texas, for several months to train into a new career field; during this time, YM and their

---

[1] The court-martial found Appellant not guilty of three specifications of assault consummated by battery and one specification of wrongfully communicating a threat, in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934.

[2] As the United States Court of Appeals for the Armed Forces recently decided this issue adversely to Appellant's position, we do not further address this issue here. *See United States v. McClour*, 76 M.J. 23, 26 (C.A.A.F. 2017).

[3] Appellant's third assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] The following factual summary is based on YM's trial testimony.

daughter lived with YM's mother in Alexandria, Virginia. In August 2013, after Appellant completed training, the family moved to Fairchild AFB, Washington.

YM testified Appellant began to physically abuse her in March or April of 2009, shortly after they began dating. YM described an incident during which, in response to a comment she made as they were walking to Appellant's car on a street after having drinks, Appellant punched her "around her chest," knocked her to the ground, dragged her to the car, and grabbed her by the hair. As a result, she had bruises on her chest and marks on her face. According to YM, the following morning she and Appellant both cried about the incident, and they reconciled after he told her it would not happen again. YM attempted to conceal the injuries, and made up a story that she had fallen to explain the visible mark on her face to her mother and co-workers.

However, YM testified she had another argument with Appellant after they had been drinking in approximately May 2009. YM testified she did not "remember much" of the incident, but she recalled Appellant hit her as they were going from his car into his off-base apartment. It was in the early hours of the morning and no one else was around.

The next incident YM described occurred on New Year's Eve in December 2009. YM and Appellant were dancing at a club when another man asked to dance with YM. A dispute ensued that resulted in Appellant and YM getting "kicked out" of the club. When they returned to their car, Appellant blamed YM for the incident and began punching her. YM attempted to leave the car, but Appellant grabbed and held her and drove them to his apartment.

Appellant assaulted YM again in October 2010 in the bedroom of his apartment after another argument. Appellant punched her "around" her chest and arms "very, very hard," and "bear-hugg[ed]" her. YM screamed and hit the walls so that the neighbors would hear, but the police did not respond that night. Appellant then threw YM on the floor and stepped on her hand, intentionally putting all his weight and "bouncing" on it, breaking her little finger. Afterwards, YM covered the bruises on her body with her clothing, but went to see a doctor regarding her broken finger.

YM testified in May or June of 2011, when she was pregnant, Appellant punched her again in the kitchen of his apartment following another argument. Appellant also pushed YM down, pinned her to the floor with his knee, kicked her, and spat on her. YM further testified that Appellant grabbed a knife, pointed it at her, and said he would "kill [them] both." However, according to YM, Appellant then got on his knees and hugged her. The following morning YM went to a hospital alone to ensure the unborn baby was unharmed; she did

not disclose the assault or threat, but instead told the hospital staff she had fallen down.

On 18 November 2011, ten days after their daughter was born, after another argument, Appellant punched YM very hard on the arm as she held the baby in the living room of Appellant's apartment. YM attempted to leave with the baby, but Appellant resisted. YM left their daughter with Appellant and went to her mother's home. YM took two pictures of the resulting bruises and sent them to Appellant's mother. She also called Appellant's mother and informed her of the abuse.

YM testified that in May or June of 2012, she had yet another argument with Appellant in his apartment. After YM retreated to a bathroom, Appellant broke through the door and struck her on her breasts. YM testified she did not report this assault and covered the resulting bruises with her clothing so no one would see.

In December 2013, YM and Appellant were in Alexandria, Virginia, visiting YM's seriously ill mother. YM and Appellant had an argument at YM's mother's house, which led to Appellant breaking open a door and stomping on YM's foot. YM again took pictures of the injury but did not inform anyone.

Finally, YM testified that in August 2014 at Fairchild AFB, after yet another argument, Appellant grabbed her by the neck and pushed her back. In 2015, YM and Appellant divorced, and YM was ultimately awarded primary custody of their daughter.

On 9 March 2015, the following specifications were preferred against Appellant: one specification of aggravated assault in violation of Article 128, UCMJ, for the October 2010 incident in which he broke YM's finger with his foot; five specifications of assault consummated by battery in violation of Article 128, UCMJ, for the incidents that occurred in May or June of 2011 and thereafter; and one specification of communicating a threat to the prejudice of good order and discipline and of a nature to bring discredit on the armed forces in violation of Article 134, UCMJ, in May or June of 2011. The assaults from 2009 were not charged.[5] The convening authority referred the charges and specifications to trial by general court-martial on 20 May 2015.

On 2 June 2015, the Defense requested copies of, *inter alia*, all of YM's medical and mental health records.

---

[5] In general, a person charged with assault under Article 128, UCMJ, "is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command." 10 U.S.C. § 843.

On 17 June 2015, Executive Order (EO) 13,696 went into effect. The EO, *inter alia*, deleted Mil. R. Evid. 513(d)(8), which had provided an exception to the psychotherapist-patient privilege established by Mil. R. Evid. 513 where "admission or disclosure of a communication is constitutionally required." However, Section 2 of the EO stated:

> Nothing in these amendments shall be construed to invalidate any . . . referral of charges, trial in which arraignment has occurred, or other action begun prior to the effective date of this order, and any such . . . action may proceed in the same manner and with the same effect as if these amendments had not been prescribed.

Exec. Order 13,696, 80 Fed. Reg. 35,783 (17 Jun. 2015).

On 8 July 2015, the Defense moved to compel production of, *inter alia*, YM's mental health records. On 13 July 2015 the Government responded that it had provided the Defense copies of the medical and mental health records in its possession, and was in the process of obtaining further records for in camera review by the military judge.[6] However, the Government contended the Defense request was "unduly burdensome, overly broad, and . . . completely unsupported," and asked the military judge to release only those portions of the records that were "material to the preparation of the Defense."

On 21 July 2015, the military judge held a closed hearing on the Defense motion to compel. Pursuant to Mil. R. Evid. 513, YM asserted her privilege to prevent disclosure of previously-undisclosed records. The Defense acknowledged EO 13,696 had "changed the landscape of military jurisprudence," but maintained Appellant had a right to the requested records under the Sixth Amendment,[7] as well as the Due Process Clause of the Fourteenth Amendment[8] under *Brady v. Maryland*, 373 U.S. 83 (1963). However, trial defense counsel conceded he had "no way of knowing" and could "merely speculate" as to what information was in the requested records. The Government opposed the motion, which assistant trial counsel characterized as "a fishing expedition in the extreme." In an oral ruling, the military judge denied the motion, finding no specific factual basis demonstrating a reasonable likelihood the records

---

[6] At some point during the investigation, YM voluntarily provided to the Government three pages of mental health records documenting one particular visit to a mental health provider. The Government provided this record to the Defense. However, both parties were aware YM had seen both military and civilian mental health providers on a number of other occasions.

[7] U.S. CONST. amend. VI.

[8] U.S. CONST. amend. XIV.

sought would yield evidence admissible under an exception to Mil. R. Evid. 513, nor that the requested information met such an exception. However, the military judge indicated he would permit the Defense to separately raise the "constitutional issue" of whether the EO's deletion of the constitutionally required exception to Mil. R. Evid. 513 was "facially invalid."

Accordingly, on 26 July 2015 the Defense filed a "Motion Related to Inapplicability of [EO] 13696 to Defense Motion to Compel IAW [Mil. R. Evid.] 513." Therein the Defense contended, *inter alia*, that although Appellant "can only speculate" as to the contents of YM's mental health records, the United States Supreme Court's decision in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), established his due process right to have the military judge conduct an *in camera* review of the records to determine if they contained information that would probably alter the outcome of the trial. In addition, the Defense contended the EO's redaction of the constitutionally-required exception was a "legally untenable" and "statutorily unconscionable" deprivation of Appellant's Sixth Amendment right to confront and cross-examine witnesses. Furthermore, the Defense asserted the application of the EO to Appellant's trial was an inappropriate retroactive application of the rule change that violated the Constitution's prohibition on ex post facto laws[9] because the EO took effect after the charges and specifications were referred to trial. In response, the Government continued to oppose disclosure, contending: (1) Appellant sought the sort of balancing of interests that the Supreme Court rejected in *Jaffee v. Redmond*, 518 U.S. 1 (1996); (2) testimonial privileges do not necessarily require a constitutional exception; (3) the privilege did not implicate Appellant's Sixth Amendment confrontation rights; (4) the Defense had not shown a specific factual basis demonstrating a reasonable likelihood the records would yield admissible evidence, as required by Mil. R. Evid. 513(e)(3)(B); and (5) the application of the EO to Appellant's trial did not violate the Ex Post Facto Clause.

On 27 October 2015, the military judge issued a written ruling denying the Defense motion. The military judge cited *United States v. Weiss*, 510 U.S. 163, 177 (1994), for the proposition that "when determining what due process is, courts 'must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces.'" He then explained:

> [ ] The Defense makes two contentions in its motion, first that the changes to Mil. R. Evid. 513 that were mandated by Congress are facially unconstitutional and second that even if not facially unconstitutional, applying the changes to the accused's case would constitute an *Ex Post Facto* violation.

---

[9] *See* U.S. CONST. art. I, § 9, cl. 3.

[ ] With respect to the first contention that the changes by Congress are facially unconstitutional this Court finds that the changes are not. First, given the applicable precedent dealing with Congressional determinations as to due process, the Court finds that the Defense has failed to establish that a due process violation has occurred. Furthermore, this Court finds that the changes to Mil. R. Evid. 513 do not facially violate the accused's right to confrontation. This Court interprets *Jaffe,* [sic] *supra* to not require after the fact trial court determinations of the confidentiality of statements protected by this privilege.

[ ] The Defense contention that the changes to the law constitute an *ex post facto* violation are also without merit. This court finds that the changes to Mil. R. Evid. 513 does [sic] not 1) punish as a crime an act previously committed, which was innocent when done; 2) make more burdensome the punishment for a crime, after its commission; or 3) deprive one charged with a crime of any defense available according to law at the time when the act was committed. The current version of Mil. R. Evid. 513 does not change the elements of any offenses, the burden of proof at trial, the maximum punishment, or the right of an accused to present any defenses. As such, the changes to Mil. R. Evid. 513 do not violate the *Ex Post Facto* Clause.

Appellant's trial commenced on 9 November 2015. Contrary to his pleas, he was convicted of the October 2010 aggravated assault and November 2011 and December 2013 assaults consummated by battery; he was acquitted of the other three charged assaults and of communicating a threat.

## II. DISCUSSION

### A. Mil. R. Evid. 513

#### 1. Law

We review a military judge's ruling on a discovery or production request for abuse of discretion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015); *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "Our review of discovery/disclosure issues utilizes a two-step analysis: first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *Id.* at 325.

Mil. R. Evid. 513(a) provides:

> A patient has a privilege to refuse to disclose and to prevent any
> other person from disclosing a confidential communication made
> between the patient and a psychotherapist or an assistant to a
> psychotherapist, in a case arising under the [UCMJ], if such
> communication was made for the purpose of facilitating diagno-
> sis or treatment of the patient's mental or emotional condition.

The privilege is subject to a number of exceptions. Mil. R. Evid. 513(d). Prior
to 17 June 2015, these exceptions expressly included when the records are "con-
stitutionally required." Mil. R. Evid. 513(d)(8) as amended by Exec. Order
13,643, 78 Fed. Reg. 29,559, 29,592 (15 May 2013). However, as described
above, EO 13,696 eliminated the enumerated "constitutionally-required" ex-
ception to Mil. R. Evid. 513 as of 17 June 2015.

Before ordering the production or admission of a patient's records or com-
munications under Mil. R. Evid. 513, the military judge must conduct a closed
hearing at which the patient is provided a reasonable opportunity to attend
and be heard. Mil. R. Evid. 513(e)(2). Before conducting an in camera review
of Mil. R. Evid. 513 evidence, "the military judge must find by a preponderance
of the evidence that the moving party showed":

> (A) a specific factual basis demonstrating a reasonable likelihood
> that the records or communications would yield evidence admis-
> sible under an exception to the privilege;
>
> (B) that the requested information meets one of the enumerated
> exceptions under [Mil. R. Evid. 513(d)];
>
> (C) that the information sought is not merely cumulative of other
> information available; and
>
> (D) that the party made reasonable efforts to obtain the same or
> substantially similar information through non-privileged
> sources.

Mil. R. Evid. 513(e)(3).

A prosecutor may not suppress evidence favorable to an accused upon re-
quest, as this violates constitutional notions of due process where the evidence
is material either to guilt or punishment, irrespective of the good faith or bad
faith of the prosecution. *Brady*, 373 U.S. at 87. When a witness's reliability
may well be determinative of guilt or innocence, nondisclosure of evidence af-
fecting credibility falls within this general rule. *Giglio v. United States*, 405
U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).
Therefore, the Government violates an accused's due process rights if it with-
holds evidence that is "exculpatory, substantive evidence, or evidence capable

of impeaching the [G]overnment's case," and "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Behenna*, 71 M.J. 228, 238 (C.A.A.F. 2012) (quotation marks omitted).

### 2. Analysis

Appellant makes several arguments related to the military judge's application of Mil. R. Evid. 513, including *inter alia*: (1) the military judge abused his discretion by applying the "new," post-EO 13,696 version of the rule to his court-martial; (2) the removal of the "constitutionally-required" exception violated Appellant's constitutional rights; (3) YM waived her Mil. R. Evid. 513 privilege by voluntarily releasing a portion of her mental health records; and (4) the Constitution required the military judge to review YM's mental health records in camera.

### a. Application of the "new" version of Mil. R. Evid. 513 to Appellant's trial

EO 13,696 went into effect on 17 June 2015, after the charges and specifications were referred to trial but before Appellant moved to compel production of YM's mental health records, and before Appellant was arraigned and tried. In ruling on the Defense motion to compel, the military judge applied the "new" Mil. R. Evid. 513 which lacks the "constitutionally-required" exception. Appellant seizes on language in Section 2 of the EO that "any . . . referral of charges, trial in which arraignment has occurred, or other action begun prior to the effective date of this order . . . may proceed in the same manner and with the same effect as if these amendments had not been prescribed" to argue that the military judge was not *required* to apply the change and, under the circumstances, abused his discretion by doing so. Exec. Order 13,696, 80 Fed. Reg. 35,783 (17 Jun. 2015).

We are not persuaded. First, although this provision *permits* such actions to proceed under the previous version of the rules, it does not *require* application of the old rules. Second, the evident purpose of this savings clause is to preserve the fairness and integrity of ongoing actions where the previous version of a rule has been applied. For example, if the military judge had made a pretrial ruling prior to 17 June 2015 relying on a provision of an "old" rule that had been changed by the EO, this clause would avert the need for the military judge to revisit that ruling in light of the change. However, in the instant case Appellant brought no motion and the military judge made no ruling prior to the rule change. Third, and relatedly, Appellant has identified no way in which the rule change has particularly impacted him to his detriment that is distinct from the impact it will have on other accused individuals in the future. Put another way, Appellant has not demonstrated any compelling reason why his

trial should have proceeded differently than any other court-martial conducted after the effective date of the rule change. Under these circumstances, we do not find the military judge abused his discretion by applying the "new" version of Mil. R. Evid. 513 in effect at the time Appellant filed his motion and at the time of his court-martial. *Cf. United States v. Roberts*, 75 M.J. 696, 700 (N-M. Ct. Crim. App. 2016) (EO 13,696 revisions to Mil. R. Evid. 404 "clearly and indisputably apply to trials in which the appellant was arraigned on or after 17 June 2015").

### b. The effect of the removal of Mil. R. Evid. 513(d)(8) on Appellant's constitutional rights

Appellant contends "the President's removal of the 'constitutionally required' exception violated Appellant's constitutional rights and was a nullity." He cites *United States v. Scheffer*, 523 U.S. 303, 308 (1998), for the proposition that "the exclusion of evidence [is] unconstitutionally arbitrary or disproportionate . . . where it has infringed upon a weighty interest of the accused." Appellant asserts the exclusion of constitutionally-required evidence in favor of a psychotherapist-patient privilege violates these principles.

In a sense, Appellant is tilting at legal windmills here. A rule of evidence cannot dictate the scope of the Constitution, and the absence of a "constitutionally-required" exception does not render a rule of evidence unconstitutional—the Constitution applies in any event. As our sister court recently observed:

> If the Constitution demands the "admission or disclosure" of otherwise privileged communications, the deletion of Mil. R. Evid. 513(d)(8) does not limit the Constitution's reach into the rule. Put differently, the Constitution is no more or less applicable to a rule of evidence because it happens to be specifically mentioned in the Military Rules of Evidence. . . . Accordingly, the reach of the constitutional exception is the same today as it was prior to the deletion of the constitutional exception . . . .

*LK v. Acosta*, 76 M.J. 611, 615 (A. Ct. Crim. App. 2017). Therefore, although the removal of Mil. R. Evid. 513(d)(8) impacts the operation of the Rule, it is not unconstitutional because the scope of the Constitution is unaffected.

However, in another sense, Appellant's concern is understandable. The military judge's written ruling appears to rely on *Jaffee* for the proposition that constitutional concerns will not pierce the psychotherapist-patient privilege of Mil. R. Evid. 513. *See Jaffee*, 518 U.S. at 17 ("Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege."). We doubt the

Court's decision in *Jaffee*, a civil case, stands for the proposition that in a criminal trial an accused's constitutional rights must yield to a military rule of evidence that includes seven other specific exceptions. *See id.* at 18 ("Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'") (citation omitted). However, it is unnecessary for us to further address the point because, for reasons explained below, the military judge's refusal to order production of the requested records or to conduct in camera review was not an abuse of discretion.

### c. The effect of YM's voluntary disclosure of the records of one mental health consultation on her Mil. R. Evid. 513 privilege

In his reply to the Government's answer to his assignment of errors, Appellant contends for the first time that YM waived her privilege by producing three pages of her mental health records before trial, which the Government shared with the Defense and which were introduced at trial as a Defense exhibit. This exhibit appears to comprise the complete record of one consultation with a civilian mental health counselor in June 2010. Appellant cites Mil. R. Evid. 510, which provides in part:

> A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege.

Mil. R. Evid. 510(a). Because Appellant did not assert this claim of waiver at trial, we test it under the plain error standard on appeal. *See United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (to prevail under a plain error analysis, an appellant must show (1) there was an error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right).

We find no error, plain or otherwise. Mil. R. Evid. 513 entitled YM "to refuse to disclose and to prevent any other person from disclosing *a confidential communication* made between the patient and a psychotherapist . . . ." Mil. R. Evid. 513(a) (emphasis added). Thus the patient may elect to invoke the privilege with respect to one such confidential communication, but not another. Mil. R. Evid. 510(a) provides a caveat that if the patient discloses or consents to disclose a significant part of one such communication, she will be considered to have waived it with respect to all of that particular communication if retaining the privilege with respect to the rest of that communication would be inappro-

priate under the circumstances. However, it appears from the record the Defense obtained the entirety of the particular consultation that YM elected to disclose.

Appellant cites *United States v. Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013), for support. We are not persuaded. In *Jasper,* the United States Court of Appeals for the Armed Forces (CAAF) applied Mil. R. Evid. 510(a) to hold that the alleged victim's affirmative consent to the disclosure of a communication covered by the Mil. R. Evid. 503 privilege for communications to clergy prevented her from later invoking the privilege with regard to the same specific information previously disclosed. *Id.* The CAAF found permitting invocation of the privilege would be inappropriate even though the alleged victim was unaware of the privilege when she originally consented to disclosure. *Id.* Although *Jasper* involved the application of Mil. R. Evid. 510(a), the essential issue was quite different than in the instant case. The CAAF did not hold that consent to disclosure of one communication required disclosure of a different communication; rather, it held that, under the circumstances, prior consent to disclose a communication to trial counsel waived the privilege with respect to that same communication at trial. Thus, it does not support Appellant's position here.

### d. Appellant's failure to offer a specific factual basis for disclosing YM's mental health records under Mil. R. Evid. 513, regardless of the continued applicability of the Constitution

In *United States v. Chisum*, 75 M.J. 943, 948–49 (A.F. Ct. Crim. App. 2016), *rev. granted*, 76 M.J. 264 (C.A.A.F. 2017), this court found the military judge abused his discretion by failing to perform an in camera review of the mental health records of two prosecution witnesses. Chisum was tried under the "old" version of Mil. R. Evid. 513, before EO 13,696 came into effect and removed the "constitutionally-required" exception enumerated at Mil. R. Evid. 513(d)(8). We found, under the circumstances of that case, the appellant had presented "specific facts to demonstrate a reasonable likelihood that the records contain relevant, non-cumulative information, necessary to confront a witness in cross-examination." *Id.* at 948. However, after reviewing the records in question, we further concluded the appellant was not prejudiced by the error. *Id.* at 952. Our superior court has since granted review. *Chisum*, 76 M.J. 264.[10]

---

[10] Specifically, the CAAF granted review of the following issue: "WHETHER THE MILITARY JUDGE'S FAILURE TO CONDUCT AN IN CAMERA REVIEW OF AND FAILURE TO DISCLOSE THE MENTAL HEALTH RECORDS OF AB AK AND AB CR DEPRIVED APPELLANT OF HIS RIGHT TO CONFRONT THE SOLE WITNESSES AGAINST HIM IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION." *Chisum*, 76 M.J. 264.

Although we have not previously addressed the requirements for in camera review under the current version of Mil. R. Evid. 513, our sister courts have published opinions reflecting significantly different approaches to the interplay between a patient's privilege under the "new" rule and an accused's rights under the Constitution. In *Acosta*, the United States Army Court of Criminal Appeals addressed the current status of the "constitutional" exception to Mil. R. Evid. 513 in the context of a patient's petition for extraordinary relief challenging a military judge's order directing the Government to produce mental health records for in camera review. 76 M.J. at 614–16. As quoted above, the court found the deletion of Mil. R. Evid. 513(d)(8) had no impact on the Constitution's application to the rule. *Id.* at 615. The court then distinguished constitutional rights to pretrial disclosure of information from rights to admit information at trial. *Id.* Finding the former and not the latter were implicated in this situation, the court then analyzed the accused's constitutional right to discovery under *Brady* and its progeny. *Id.* at 615–16. Referring to its previous decision in *United States v. Shorts*, 76 M.J. 523, 531–32 (A. Ct. Crim. App. 2017), the court held "[m]ental health records located in military or civilian healthcare facilities *that have not been made part of the investigation* are not 'in the possession of the prosecution' and therefore cannot be '*Brady* evidence.'" *Acosta*, 76 M.J. at 616 (emphasis in original).[11]

The United States Navy-Marine Corps Court of Criminal Appeals adopted a very different approach in *J.M. v. Payton-O'Brien*, 2017 CCA LEXIS 424 (N-M. Ct. Crim. App. 2017). There the court granted a patient's petition challenging a military judge's order that her mental health records be produced and disclosed, notwithstanding the deletion of Mil. R. Evid. 513(d)(8), because the accused's constitutional rights required it. *Id.* at *1–5. The court found the intent of Congress and the President that the privilege be absolute, outside of the enumerated exceptions, to be "clear-cut." *Id.* at *11–12. The court stated: "any application of the former Mil. R. Evid. 513(d)(8) constitutional exception by the military judge was improper. Adopting the military judge's rationale would force us to ignore the plain language of the rule, the obvious intent of both Congress and the President, and binding precedent." *Id.* at *14. Yet, the court continued, "we may not allow the privilege to prevail over the Constitution." *Id.* The court stated, "noble goals and notable policy concerns cannot trump the [accused's] right to 'a meaningful opportunity to present a complete defense.'" *Id.* at *17 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). The court continued:

---

[11] The court went on to analyze whether disclosure was required under the exception for child abuse or neglect enumerated at Mil. R. Evid. 513(d)(2), a claim Appellant has not raised before us in his appeal.

It is impossible to define all of the situations in which the privilege's purpose would infringe upon an accused's weighty interests, like due process and confrontation. However, courts have allowed discovery of privileged information in the following areas: (1) recantation or other contradictory conduct by the alleged victim; (2) evidence of behavioral, mental, or emotional difficulties of the alleged victim; and (3) the alleged victim's inability to accurately perceive, remember, and relate events.

This non-exhaustive list illustrates situations in which the privacy rights of the victim may yield to the constitutional rights of the accused. In these scenarios, serious concerns may be raised regarding witness credibility—which is of paramount importance—and may very well be case-dispositive.

*Id.* at \*17–18 (footnotes omitted). The court then described the procedure military judges should follow to carefully delineate the extent to which a patient has elected to invoke the privilege, and to craft judicial remedies—such as striking or precluding testimony, dismissing charges, abating proceedings, or declaring a mistrial—to protect such weighty interests of the accused as might be threatened by the invocation of the privilege in the particular case. *Id.* at 18–25.

*Acosta* and *Payton-O'Brien*, then, present very different approaches to reconciling an accused's constitutional rights with the current Mil. R. Evid. 513. *Chisum*, although decided under the prior version of the rule, may be read to represent a third approach. Notably, in *Chisum* we did not explicitly rely on or refer to Mil. R. Evid. 513(d)(8) in concluding the appellant's constitutional rights required piercing the patient's privilege at least to the extent of securing the records in question for in camera review. *Chisum*, 75 M.J. at 948. *Chisum* may be read, in contrast to *Acosta* and *Payton-O'Brien*, for the proposition that an accused's constitutional rights with regard to mental health records that have not been made part of the accused's investigation may override a patient's non-disclosure privilege under Mil. R. Evid. 513 so as to require in camera review, irrespective of the existence of an enumerated exception. Again, we note the CAAF has taken *Chisum* for review.

In such an unsettled area of the law, it behooves us to tread lightly. In the interests of judicial economy and in fairness to the parties before us today, we are well-advised to decide the issue based on what is clear, and leave questions that do not require decision for another day. In this case, what is clear is that the Defense failed to present the military judge with a specific factual basis demonstrating a reasonable likelihood that the records would yield information constitutionally required to be admitted or disclosed. *See* Mil. R. Evid. 513(e)(3)(a). The Defense provided no detail with respect to the anticipated

contents of YM's mental health records in its 8 July 2015 motion to compel, which was amalgamated with its motion to compel production of numerous other items it sought in pretrial discovery. During the hearing on the Mil. R. Evid. 513 motion, trial defense counsel frankly conceded he had "no way of knowing" and could "merely speculate" as to the contents of the records. The military judge then denied the motion. We cannot say he abused his discretion in doing so in the total absence of any specific showing.

The subsequent 26 July 2015 "Motion Related to Inapplicability of [EO] 13696 to Defense Motion to Compel IAW [Mil. R. Evid.] 513," while primarily focused on the alleged inapplicability of the change to Mil. R. Evid. 513 to Appellant's court-martial, offered slightly more in terms of what the Defense believed might be in YM's mental health records. The Defense proposed:

> It is further reasonable to conclude that records of such counseling sessions . . . would contain information related to the charged events (and perhaps events related to [AU, the father of YM's son by a previous relationship]), to include the alleged victim's reactions. The counseling records could plausibly be expected to contain her recollections of statements made (or perhaps not made) by [Appellant].

However, the motion continued: "Naturally the Defense can only speculate as to the contents of these counseling records. Simply stated 'we cannot know what we have not seen.'" As described above, the military judge focused his ruling on this motion on rejecting Appellant's contentions that both the change to Mil. R. Evid. 513 and its application to his court-martial were unconstitutional, but to the extent he declined to revisit his previous denial of the motion to compel we find no abuse of discretion on so anemic a showing.

Therefore, even if we presume (without holding) that the constitutional interests of an accused articulated in *Chisum* continue to apply despite the redaction of Mil. R. Evid. 513(d)(8), we find the Defense did not make the requisite showing of the kind this court found to exist in *Chisum* that warranted in camera review. 75 M.J. at 948–49. Thus, Appellant is entitled to no relief.

## B. Legal and Factual Sufficiency

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United*

*States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

As the military judge instructed the court members, Appellant's conviction for aggravated assault in October 2010 required the Prosecution to prove the following elements beyond a reasonable doubt: (1) that within the state of Maryland, between on or about 1 October 2010 and on or about 12 October 2010, Appellant did bodily harm to YM; (2) that Appellant did so by a certain force by stomping on her right hand with his foot; (3) that the bodily harm was done with unlawful force or violence; and (4) that the force was used in a manner likely to produce grievous bodily harm. *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), pt. IV, ¶ 54.b.(4)(a). "Grievous bodily harm" includes "fractured or dislocated bones." *MCM*, pt. IV, ¶ 54.c.(4)(a)(iii). Appellant's convictions for assault consummated by battery in November 2011 in Maryland and December 2013 in Virginia required the Prosecution to prove the following elements: (1) that at the location and on the dates alleged, Appellant did bodily harm to YM; (2) that Appellant did so by striking YM in the manner alleged; and (3) that the bodily harm was done with unlawful force or violence. *MCM*, pt. IV, ¶ 54.b.(2)(a).

YM provided testimony establishing each of the required elements. In addition, her testimony regarding the October 2010 aggravated assault was supported by the testimony of two doctors and medical records documenting her broken finger, as well as by photographs YM took of the bruises on her body. Similarly, the Government introduced photographs YM took of the bruises Appellant's assaults left on her arm in November 2011 and her foot in December 2013. YM's testimony was further supported by the testimony of Appellant's sister, who confirmed YM called Appellant's mother after the November 2011 assault, and who personally spoke with YM who was "crying a lot" and told her

Appellant physically abused her. In addition, the Government introduced the testimony of one of YM's friends, who stated YM began informing her of the abuse before YM's daughter was born, and who saw photos of YM's injuries.

Before us, Appellant returns to several themes he argued at trial. He emphasizes YM's physically abusive prior relationship with AU, which ended in 2008 before YM met Appellant. Appellant emphasizes that AU still lived in the Alexandria, Virginia area and remained in contact with YM due to the joint custody of YM and AU's son. However, we find no support for Appellant's assertion that AU rather than Appellant was the likely source of YM's injuries, or that she used these injuries to falsely accuse Appellant. Similarly, we find unpersuasive Appellant's contention that YM "never alleged" Appellant abused her until after they split and engaged in a custody battle over their daughter. The medical testimony and records, the photographs, the testimony of Appellant's own sister and of YM's friend, and even the three-page mental health record introduced as a Defense exhibit all tend to show the assaults and injuries were real and that YM told others Appellant was hurting her long before they separated. These and other arguments put forward by Appellant fail to significantly undermine the evidence supporting his convictions.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," *Barner*, 56 M.J. at 134, the evidence was legally sufficient to support Appellant's convictions beyond a reasonable doubt. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction is therefore also factually sufficient.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

17