UNITED STATES

v.

**Senior Airman Ricky D. CHISUM, Jr., United States Air Force**

**ACM S32311**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 29 January 2015 by SPCM convened at Keesler Air Force Base, Mississippi.

29 November 2016

---

Military Judge: Marvin W. Tubbs II.

Appellate Counsel for Appellant: Major Thomas A. Smith and Captain Jarett F. Merk.

Appellate Counsel for the United States: Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and DUBRISKE Appellate Military Judges

## PUBLISHED OPINION OF THE COURT

J. BROWN, Senior Judge:

Contrary to his pleas, Appellant was convicted by a special court-martial composed of officer members of using cocaine on one occasion, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] The court sentenced Appel-

lant to a bad-conduct discharge, confinement for 3 months, forfeiture of $1,031.00 pay per month for 3 months, reduction to E–1, and a reprimand. The convening authority approved only 49 days of confinement, but otherwise approved the sentence as adjudged.

Before us, Appellant claims: (1) the military judge erred when he denied a defense motion to compel production of mental health records for in camera review; (2) his conviction of using cocaine is factually insufficient; and (3) improper findings arguments by trial counsel warrant reversing his conviction. Although we concur that the military judge erred in denying a defense motion to compel production of the mental health records for two witnesses for an in camera review, we find that this error did not materially prejudice a substantial right of Appellant. We further conclude that the other alleged errors do not entitle Appellant to relief. Accordingly, we affirm.

### Background

In January 2015, Appellant was convicted of using cocaine with Airman Basic (AB) AK during a 2012 trip to New Orleans, Louisiana. The evidence of this use was primarily the testimony of AB AK and another witness.

AB AK testified that, in 2012, Appellant went with him to New Orleans, Louisiana, intending to buy and use the drug ecstasy. They were not able to find that drug, however, and instead purchased a baggie of cocaine, which they shared by snorting it through a dollar bill rolled into a straw in an alley near Bourbon Street. When they had finished using that bag of cocaine, Appellant and AB AK returned to the dealer who had sold them the drug. They purchased more cocaine, and used it in the manner they had used the drug earlier.

The second witness, AB CR, testified that while on a trip to New Orleans with Appellant and AB AK, he saw Appellant holding a bag containing a white powdery substance. He also recalled that AB AK and Appellant walked into an alley and, from across the street, saw Appellant raise his hands up to

---

1. Appellant was acquitted of all other alleged drug offenses, including divers use of "ecstasy," divers use of marijuana, divers use of cocaine, divers use of hydrocodone, and divers distribution of hydrocodone.

his nose. AB CR did not witness any of the other alleged drug offenses against Appellant as testified to by AB AK at trial.

The credibility of these two witnesses, as well as their ability to accurately perceive and recall what occurred that evening in New Orleans, were critical to the Government's ability to prove, beyond a reasonable doubt, that Appellant used cocaine in New Orleans.[2]

## I. Discovery of Mental Health Records

Appellant first argues that the military judge erred when he denied a Defense request to compel the production, and perform an in camera review, of the mental health records of the Government's two key witnesses, AB AK and AB CR.[3]

The information the Defense provided to the military judge to support their request for an in camera review was as follows:

AB AK: The witness told defense counsel that, as a result of being a habitual drug user, he has experienced memory issues. AB AK also disclosed that he had seen mental health providers, discussed his memory problems with them, and received a mental health diagnosis.[4] In addition, the military judge was informed that AB AK previously testified at another court-martial two weeks prior and that the military judge in that case, after conducting an in camera review, determined that a portion of AB AK's mental health records were properly releasable to counsel in that case.[5]

AB CR: This witness testified in a closed hearing that he has had memory issues, and potentially suffered from post-traumatic stress disorder since returning from a prior deployment to Iraq. AB CR also admitted that he told Appellant's counsel that he suffered from paranoia and that he felt the need to have a sanity board. He testified that he talked to military mental health providers about his memory issues and the facts and circumstances surrounding his court-martial.

The military judge concluded that Appellant failed to articulate a specific factual basis demonstrating a reasonable likelihood that the requested records would yield information admissible under an exception to Mil. R. Evid. 513. The military judge also found the information sought, despite not reviewing it in camera, to be cumulative with material already available to the Defense through non-privileged means. The military judge denied the Defense motion for production and in camera review, and elected not to attach any of the mental health records as sealed appellate exhibits for further appellate review.

### A. When would a military judge abuse his discretion by failing to conduct an in camera review of mental health records?

■ We review a trial judge's conclusion that an appellant failed to provide a sufficient basis for an in camera review for an abuse of discretion. *See United States v. Wuterich*, 67

---

**2.** AB AK's credibility was even more critical as to the other charged offenses of divers use of "ecstasy," divers use of marijuana, divers use of cocaine, divers use of hydrocodone, and divers distribution of hydrocodone. The members acquitted Appellant of all allegations based solely on AB AK's testimony.

**3.** On 16 August 2016, this court ordered that the Government produce the sealed mental health records of AB AK and AB CR for appellate review. On 19 September 2016, the Government complied with the order and provided the requested records to this court. Both parties submitted supplemental briefs on 28 October 2016.

**4.** Trial defense counsel attempted to further establish a basis for their request during a closed hearing by asking AB AK if he ever talked to his providers about any instances that involved Appellant. The military judge sua sponte stopped trial defense counsel before the witness could

answer. The military judge failed to further clarify with AB AK whether he was willing to respond to this generalized question that did not elicit specific statements to his mental health provider. Unfortunately, it is the response to this type of generalized question that could have further assisted the military judge in determining whether the Defense had met their burden for an in camera review.

**5.** Although the military judge in his ruling did not specifically reference that another military judge had conducted an in camera review of AB AK's mental health records and released portions to a defense counsel in another case, this information, as well as a transcript of AB AK's prior trial testimony and cross-examination, were provided to both the military judge and trial defense counsel.

M.J. 63, 65 (C.A.A.F. 2008); *United States v. Lyson*, ACM 38067, unpub. op. at 14, 2013 WL 5436639 (A.F. Ct. Crim. App. 16 September 2013).

Rule for Courts–Martial (R.C.M.) 701 addresses discovery in courts-martial. R.C.M. 701(a)(2)(B) requires that the defense be permitted to inspect the "results or reports of physical or mental examinations ... which are within the possession, custody, or control of military authorities, ... and which are material to the preparation of the defense." R.C.M. 701(f) adds, however, "Nothing in this rule shall be construed to require the disclosure of information protected from disclosure by the Military Rules of Evidence."

R.C.M. 703 governs the production of witnesses and evidence. This rule entitles both parties to the production of evidence which is relevant and necessary. R.C.M. 703(f)(1). Despite this, neither party is entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. R.C.M. 703(f)(2).

 "Normally, in camera review is an appropriate mechanism to resolve competing claims of privilege and right to review information." *United States v. Wright*, 75 M.J. 501, 510 (A.F. Ct. Crim. App. 2015); *United States v. Bowser*, 73 M.J. 889, 897 (A.F. Ct. Crim. App. 2014), *aff'd* 74 M.J. 326 (C.A.A.F. 2015) (mem.). There is not a "cognizable harm to a privilege it holds merely because the military judge orders documents to be produced for in camera review." *Wright*, 75 M.J. at 510. However, in camera review is not automatically appropriate every time one party seeks information over which another claims privilege. *Id.*

Military Rule of Evidence 513 addresses the disclosure of psychotherapist-patient records. Generally, this privilege provides that

[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of

the patient's mental or emotional condition.

 This privilege, however, is not absolute. *See Bowser*, 73 M.J. at 898–900. A prosecutor may not suppress evidence favorable to an accused upon request, as this violates notions of due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). When a witness's reliability may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). Therefore, the Government violates an accused's due process rights if it withholds evidence that is "exculpatory, substantive evidence, or evidence capable of impeaching the government's case," and "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Behenna*, 71 M.J. 228, 238 (C.A.A.F. 2012) (internal quotation marks omitted).

Despite the value of a military judge utilizing in camera review, Mil. R. Evid. 513 provides little insight as to when a military judge might abuse his discretion, in relation to production and in camera review of such records, where it is not known if the records contain information that would require disclosure to the defense.

The pertinent portions of Mil. R. Evid. 513 in effect at the time of Appellant's court-martial stated:

(e) Procedure to determine admissibility of patient records or communications.

(1) In any case in which the production or admissibility of records or communications of a patient other than the accused is a matter in dispute, a party may seek an interlocutory ruling by the military judge.

. . .

(3) The military judge may examine the evidence or a proffer thereof in camera,

if such examination is necessary to rule on the motion.

Mil. R. Evid. 513(e) as modified by Executive Order 13,643.[6]

In *Wright*, we examined the requirements for ordering in camera review of potentially privileged material. In doing so, we cited with approval and followed *United States v. Klemick*, 65 M.J. 576, 580 (N.-M. Ct. Crim. App. 2006), where our sister service court established a three-prong test for this question of in camera review:

(1) Did the moving party set forth a specific factual basis demonstrating a reasonable likelihood that the requested privileged records would yield evidence admissible under an exception to Mil. R. Evid. 513; (2) Is the information sought merely cumulative of other information available; and (3) Did the moving party make reasonable efforts to obtain the same or substantially similar information through non-privileged sources?

▓ A finding of necessity is the common thread that weaves its way through all three of the *Klemick* questions. In other words, a judge must consider whether the defense provided sufficient facts to demonstrate a reasonable likelihood that the records contain relevant, non-cumulative information, necessary to confront a witness in cross-examination.

▓ Furthermore, in applying this three-prong test, we recognize that the burden for in camera review is not high because the moving party will often be unable to determine the specific information contained in a psychotherapist's records. *See id.* We also note that "[w]here discovery obligations potentially impact a recognized privilege, an in camera review is generally the preferred method for resolving the competing compulsions." *Bowser*, 73 M.J. at 897.

B. *The trial judge abused his discretion when he failed to perform an in camera review*

▓ In applying the *Klemick* test to this case, we must consider whether the Defense

demonstrated a sufficient factual basis that there was a reasonable likelihood that the records over which the Government claimed privilege contained information necessary to confront AB AK and AB CR regarding their ability to accurately perceive and recall the incidents that purportedly occurred in New Orleans three years prior to trial.[7] After considering this question, we conclude that the military judge abused his discretion in not conducting an in camera review of both AB AK's and AB CR's mental health records.

As to AB AK's records, the military judge abused his discretion for two reasons. First, AB AK admitted to significant memory problems and testified that he discussed these very problems with his mental health provider. That AB AK admitted to some memory problem does not mean that the Defense was at the mercy of AB AK to accurately describe and reveal the extent of those problems. That he had significant memory problems was not in dispute—though the severity of his memory problems and how they may have impacted his ability to accurately recall and testify at this court-martial was. AB AK's discussions with his mental health provider, and any potential diagnosis related to those discussions, would provide greater clarity on his ability to perceive and accurately recall what he claimed to have observed three years earlier. This was not a proverbial fishing expedition by the Defense. They had a reasonable basis to question AB AK's ability to accurately perceive and recall, and the Defense provided to the military judge a reasonable basis for the military judge to conclude that the mental health records contained further information reflecting the extent and severity of AB AK's memory problems.

Second, another military judge had reviewed AB AK's mental health records several weeks prior, in a companion case where AB AK was a witness, and that prior judge previously released portions of the record to that defense team. Admittedly, the military

---

**6.** 78 Fed. Reg. 29,559, 29,592–93 (15 May 2013).

**7.** The Defense also asserted that there was a reasonable likelihood that the records contained inconsistent statements, evidence of bias, and

evidence of fabrication. We do not find, however, that the Defense provided sufficient information to demonstrate a reasonable likelihood that the records contained this type of information.

judge in Appellant's case did not know exactly what was previously released or why, but that something in the records was previously identified as releasable by a neutral and detached military judge certainly should have been a consideration in deciding whether to conduct an in camera review here. Despite this, the military judge apparently did not consider the potential impact of the other military judge's prior review and release of matters in determining whether the Defense met their burden as to an in camera review. This constituted an abuse of discretion. In so concluding, we do not assert that this judge would have come to the same conclusion as the prior judge about what, if anything, should be released. We also do not assert that this information was necessarily non-cumulative with information already obtained by the Defense. We do conclude, however, that the Defense carried their burden such that the military judge should have conducted an in camera review.

The Government, both at trial and on appeal, views the significance of this prior release of records differently. They cite to the Defense receiving the prior cross-examination of AB AK as evidence that an in camera review was not required—that the Defense effectively received the benefit of another attorney reviewing the records. This argument is misplaced. Although it may have been a related case, the defense counsel in that case formulated the cross-examination in a manner to best assist their client—not Appellant. The information in the cross-examination may very well be cumulative as discussed below, but that is a conclusion best reached by first reviewing the mental health records in camera and making a determination based on the unique facts and circumstances of this case.

As to AB CR's records, the military judge also abused his discretion in not conducting an in camera review. Like AB AK, AB CR also admitted to significant memory issues. Unlike AB AK, however, AB CR attributed his issues to the effects of post-traumatic stress disorder incurred during an earlier deployment. AB CR also described himself as suffering from paranoia and that he felt he needed a sanity board. He sought assistance

for these problems and talked to mental health about his memory issues. In this context, statements about his memory problems and potentially any diagnosis relating to memory loss would be critical in evaluating the witness' credibility. As with AB AK, the existence of significant memory problems was not in dispute, though the severity of the problems and how it might impact his testimony was the crux of the Defense case. This testimony provided a sufficient basis for the military judge to perform an in camera review of AB CR's mental health records. Under the facts of this case, the trial judge's failure to conduct an in camera review was an abuse of discretion.

*C. Appellant was not prejudiced by the military judge's failure to conduct an in camera review of these mental health records*

■ To determine if the military judge's failure to conduct an in camera review rises to the level of constitutional error we must determine if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [trial defense counsel] been permitted to pursue his proposed line of cross-examination." *United States v. Collier*, 67 M.J. 347, 352 (C.A.A.F. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). "Whether sufficient cross-examination has been permitted depends on whether the witness's motivation for testifying has already been exposed and further inquiry . . . would [be] marginally relevant at best and potentially misleading." *United States v. Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013) (quoting *Collier*, 67 M.J. at 352) (internal quotation marks omitted).

That the trial judge should have conducted an in camera review of the mental health records does not resolve whether there was, in fact, non-cumulative information that was necessary for the Defense to cross-examine these witnesses—in other words, whether in camera review would have resulted in disclosure to the Defense. The Defense did have significant information to assist in their cross-examination of both AB AK and AB CR. The Government provided the Defense

with the prior testimony of AB AK from another court-martial where he was cross-examined by a defense attorney who had received a portion of AB AK's mental health records. The Defense, through interviews of AB AK and AB CR, also had additional information to cross-examine these witnesses and, at least to an extent, raise questions as to their credibility and question the extent that the members should rely on the accuracy of their testimony.

▌ Despite this error, we must next determine whether Appellant was prejudiced by the military judge's failure to conduct an in camera review. The question of prejudice hinges on whether the military judge's failure to conduct an in camera review "essentially deprived Appellant of [the] best defense" that "may have tipped the credibility balance in Appellant's favor." *United States v. Moss*, 63 M.J. 233, 239 (C.A.A.F. 2006); *see also United States v. Savala*, 70 M.J. 70, 78 (C.A.A.F. 2011). Where the error violates an accused's right to confront the witnesses against him, this court should weigh "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431. "The burden is on the Government to show that "there is no reasonable possibility" that the error "contributed to the contested findings of guilty." *Collier*, 67 M.J. at 355 (quoting *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007).

▌ Under the unique facts of this case, it is not necessary for us to determine what information from the mental health records should or would have been provided to the Defense if the military judge had conducted an in camera review. Based upon our review of the mental health records at issue in this case, we are convinced that any error in failing to provide any portion of those records to the Defense was harmless beyond a reasonable doubt. The Defense already had sufficient information to cross-examine these witnesses on the matters found in their mental health records, and, after considering the entirety of the trial, the additional information contained in the records would not have changed the substance or effectiveness of their cross-examination or defense theory.

Appellate defense counsel does not identify anything in AB AK's mental health records that was not otherwise available to the Defense and was critical to the Defense's ability to cross-examine AB AK's testimony at trial. At trial, AB AK conceded in cross-examination that he would do whatever the Government asks at this point and he described himself as a "manipulative person" and a "con-artist." He also admitted to lying about his pre-service drug use, completion of duties at work, violation of a no-contact order, conversations with law enforcement investigators, and conversations with medical providers about his drug use, as well as providing false testimony in a prior court-martial.

Appellate defense counsel, however, asserts that the Defense's expert could have used the records to more effectively assist the trial defense counsel in cross-examining AB AK. Nevertheless, we have reviewed the entirety of the record and conclude that, even absent that expert assistance, the Defense effectively attacked AB AK's credibility and ability to accurately perceive and recall. This effective cross-examination resulted in acquittals to the multiple criminal allegations that were based solely on AB AK's testimony.

As to AB CR, appellate defense counsel does identify three additional pieces of information in AB CR's mental health records that were not otherwise known to the Defense and that they assert would have been critical to an effective cross-examination of this witness: (1) AB CR's admission to self-medicating with illegal drugs during the general time period when he testified that he witnessed Appellant's use of cocaine; (2) whether AB CR initially lied to his medical providers about the extent of his alcohol use and his use of illegal drugs; and (3) whether his diagnosed mental illness showed that he was highly suggestible and more easily influenced by trial counsel and investigators who offered immunity and a means for continued

access to mental health care. As with AB AK, however, we are not persuaded that the military judge's error prejudiced Appellant. As described in more detail below, the Defense was able to effectively cross-examine AB CR. The lack of information from AB CR's mental health records did not contribute to the verdict and there is no reasonable possibility that this additional information would have changed the outcome.

*Self-medication*: There was nothing that tied AB CR's purported self-medication with illegal drugs to his ability to accurately recall and perceive Appellant's purported drug use on that evening in New Orleans. Further, the Defense was able to establish that AB CR was intoxicated that evening and they suggested that his intoxication could have impacted his ability to accurately perceive and recall what happened that evening. Most importantly, AB CR explained to the members that he had "a lot of memory and perception issues," that he "struggle[d] to really know what's real and what's not real" since returning from his deployment in 2010, and that he did not have "a clear memory of anything" during 2012. In light of what the Defense already had on this point, AB CR's self-medication with illegal drugs during that general timeframe would have provided little additional benefit.

*Non-disclosure of drug use*: AB CR initially denied his illegal drug use to his medical providers. He later admitted to his provider that he twice used illegal drugs in the summer of 2012. It is not surprising that a patient might initially not be forthright in admitting illegal activity to a mental health provider. We are confident that any potential benefit of this information to the Defense, in light of the cross-examination, would have had no impact on the proceedings. In the context of this case, and in light of the Defense's effective cross-examination highlighting AB CR's motivation to testify against Appellant, his significant memory issues, and his limited ability to observe Appellant's purported drug use on the night in question, there was little additional benefit to a line of attack based on AB CR's initial non-disclosure of personal drug use to his medical provider.

*Potential Suggestibility*: Appellant also asserts that AB CR's mental health records would support that the witness was highly suggestible. The Defense, however, was able to highlight this without this information. The Defense questioned AB CR about a favorable pretrial agreement that he received for providing the Government information about Appellant's drug use. In return, the Government referred his case to a Summary Court–Martial, where a punitive discharge was not authorized and the potential confinement was limited to 30 days. AB CR testified about the amount of pressure he felt to provide testimony against Appellant:

Q: Now, as part—to get that deal, you signed or your attorney signed a proffer, correct?

A: Yes.

Q: And that proffer was about [Appellant]?

A: Yes.

Q: And in entering that proffer and stating that [Appellant] used drugs, you felt that you had to write the proffer to continue treatment, correct?

A: Yes.

Q: And that was very important to you, right?

A: Yes.

Q. In fact, you told me that you felt pressured to provide the proffer, right?

A. I don't feel like pressure adequately describes how I felt.

. . .

Q. So how—if you could, describe adequately how you felt about that pressure to the members.

A. Well, you can picture what it's like coming back from deployment and being broken, and then being faced with the possible reality of not being able to receive mental health care, and facing life without mental healthcare, and the possibility that you might not be able to hold down a job without medications. If you can picture that kind of life, and realize that you have a family to take care of, a one-year-old and a newborn—almost newborn—a pregnant wife, and realize that knowing that alone that you don't have a chance in the world

of giving them the life that they deserve, then you can picture how I felt and what I would do.

Q.... Now, you told me in an interview that you felt like in that proffer you told them what they wanted to hear, right?

A. Yes.

Q. And that you could have made it all up, right?

A. That's what I told you.

In addition, during findings argument, the Defense emphasized this point when he observed that it was "sad to watch [AB CR] testify on the witness stand" because of his post-traumatic stress disorder and his memory issues. The Defense described him as a "bewildered" man. Though AB CR was a critical witness for the Government as he corroborated one of the uses described by AB AK, there was extensive cross-examination focusing on the potential that AB CR's was being pressured to testify a certain way. It was not the quality, or certainty, of AB CR's testimony that made it effective. It was that his minimal testimony happened to corroborate AB AK's testimony regarding Appellant's use of cocaine on that one occasion.

After our own review of the mental health records, and consideration of the cross-examinations at trial; we conclude that Appellant was not prejudiced by the military judge's failure to conduct an in camera review of these records. Appellant was convicted of the sole offense where AB AK and AB CR corroborated each other. Concerns about AB CR's ability to accurately recall and perceive were offset by the corroborating testimony of AB AK, and vice versa.

The Defense's cross-examination of these two witnesses highlighted their potential difficulty in accurately remembering and perceiving what occurred during that purported use of cocaine. The Defense also highlighted the pressure that AB CR felt to provide testimony against Appellant. Though the military judge should have conducted an in camera review of these mental health records under the facts of this case, nothing in these records would have substantially altered the substance of the cross-examination or Defense's cross-examination strategy. As the

failure to conduct an in camera review did not prejudice Appellant, he is not entitled to relief as to this error.

## II. Factual Sufficiency

Appellant next contends that the evidence is factually insufficient to sustain his conviction for using cocaine. In doing so, he provides essentially a replay of the arguments he made during trial. He claims in particular that the key Government witnesses—his two former friends, AB AK and AB CR—who had themselves been disciplined for drug abuse, who had motives to testify falsely against him, suffered from memory and perception deficiencies, and were otherwise unreliable witnesses.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Having carefully reviewed the record in this case, we are satisfied that Appellant went to New Orleans and used cocaine as alleged. We are also unpersuaded that AB AK and AB CR, while both admittedly suffering from memory and perception difficulties, would simultaneously and inadvertently fabricate the same incident and corroborate each other. We are also not persuaded that AB AK and AB CR colluded with each other to fabricate this sole allegation against Appellant. As the members acquitted Appellant of all of the drug allegations where AB AK's testimony was the sole evidence, and only convicted him of the one offense that was corroborated by both AB AK and AB CR, we

can only conclude that the members came to that same conclusion. We find the evidence factually sufficient.

### III. Trial Counsel Argument

During findings argument below, the Government argued that its witness, AB AK, had testified truthfully. Before us, Appellant claims this constituted improper "vouching" for the witness and warrants reversal of his conviction. We disagree.

 Whether argument is improper is a question of law. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). Where trial defense counsel has objected to the argument, we review de novo whether the statements were erroneous and materially prejudicial to the substantial rights of the appellant. *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000).

In the present case, trial defense counsel objected only to the first of several times the Government argued that AB AK had testified truthfully. We find, nevertheless, that the complaint against all of such arguments has been adequately preserved. *See United States v. Bowser*, 34 C.M.R. 906, 909 (A.F.C.M.R. 1963) ("[M]ilitary law does not require a defense counsel to clutter the record with repeated objections to preserve the errors on appeal.") We find also, however, that the Government argument was not erroneous.

 AB AK was the key witness and co-participant with Appellant in his use of co-caine. The Defense vigorously attacked AB AK's testimony during cross-examination, and made his credibility the central theme in their case for acquittal. Our review of the record indicates no inappropriate "vouching" nor any other improper argument by the Government in this regard. *See United States v. Fletcher*, 62 M.J. 175, 180 (C.A.A.F. 2005) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)) ("Improper vouching occurs when the trial counsel 'places the prestige of the government behind a witness through personal assurances of the witness's veracity.'"). During findings argument, the Government marshalled evidence in support of its claim that AB AK had told the truth—just as the Defense argued he was lying. This line of argument is common to trial litigation, and we find it proper. *See* R.C.M. 919 (findings arguments "may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory of the case"). We reject this assignment of error.

### Conclusion [8]

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a); 866(c). Accordingly, the approved findings and the sentence are **AFFIRMED**.

---

8. Although not raised as an issue on appeal, we also note there was presumptively unreasonable post-trial delay of 19 months between docketing and a decision in this case. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006) (establishing that a delay greater than 18–month in a service court's review of a case is presumptively unreasonable). Appellant submitted his initial assignment of errors on 29 April 2016 (14 months after docketing). One allegation of error alleged that the military judge erred in failing to conduct an in camera review of certain mental health records. As to this issue, this court agreed and, on 16 August 2016, we directed that the Government provide the records for this court's review. On 19 September 2016, the Government provided the requested records for our review. On 28 October 2016, the Defense submitted a supplement to their assignment of error arguing that Appellant was prejudiced by the military judge's failure to perform an in camera review at trial. Although the time from docketing to issuing the opinion in this case exceeded 18 months, we find, having considered the totality of the circumstances and the entire record, that the appellate delay in this case was harmless beyond a reasonable doubt. *Id.* at 135–36 (reviewing claims of post-trial and appellate delay using the four-factor analysis found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). We also decline to exercise our power under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant Appellant relief for the post-trial delay in this case. *See United States v. Tardif*, 57 M.J. 219, 224–25 (C.A.A.F. 2002).