# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, MULLIGAN,[1] and SALUSSOLIA
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant LUIS A. RODRIGUEZ JR.**
**United States Army, Appellant**

ARMY 20180138

Headquarters, 7th Infantry Division
Timothy P. Hayes, Jr., Lanny J. Acosta, Jr., and Michael S. Devine, Military Judges
Colonel Russell N. Parson, Staff Judge Advocate

For Appellant: Captain James J. Berreth, JA; Nathan Freeburg, Esquire (on brief and supplemental brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Virginia Tinsley, JA; Major Meghan Peters, JA (on brief).

1 October 2019

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Senior Judge:

Appellant was charged with two specifications of violating Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]: Specification 1 alleged rape; Specification 2 alleged abusive sexual contact. A panel of officers sitting as a general court-martial acquitted appellant of rape but convicted him, contrary to his plea, of abusive sexual contact. The convening authority approved the adjudged sentence of a bad-conduct discharge, two years of confinement, and reduction to the grade of E-1.

Appellant contends that the military judge erred in denying his Military Rule of Evidence (Mil. R. Evid.) 513 motion for an in camera review of his accuser's mental health records or, in the alternative, failing to abate the proceedings if his

---

[1] Senior Judge Mulligan decided this case while on active duty.

accuser did not agree to the production of her records. Appellant also asserts he received ineffective assistance of counsel because his trial defense team failed to challenge Lieutenant Colonel (LTC) CF, a member of his panel whose spouse was a victim of a sexual offense. We disagree with both assertions, and while both warrant discussion, neither merits relief.[2]

## BACKGROUND

Between October 2016 and February 2017, appellant was a non-commissioned officer working as a medic in the same unit as Corporal (CPL) AK.[3] Eventually they made plans to socialize off duty. On 17 February 2017, appellant drove to CPL AK's barracks, picked her up, and the two of them went to the on-post Shoppette to purchase alcohol before returning to CPL AK's barracks room. At CPL AK's barracks room, they drank and played games.

After a few hours, CPL AK laid down to go to sleep, telling appellant he should go home because she was ready to go to sleep. Instead, appellant turned off the light, climbed into bed with CPL AK, and placed his arm over her body and his hand, over her clothing, on her crotch area. She pushed his hand away and told him, "No, I did not want to tonight. . . . I'm going to sleep. Go home." Ignoring her express desire that he stop and go home, appellant grabbed her "genitals [over her clothing] a lot more aggressively."

---

[2] Appellant also contends that the evidence is legally and factually insufficient to sustain his abusive sexual contact conviction. We find no merit in this argument. Similarly, we find those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982) to be without merit.

[3] At the time of the charged offense, 17 February 2017, Corporal AK held the rank of Specialist (SPC). Subsequent thereto she was laterally promoted to Corporal (CPL), the rank she held when she testified in appellant's court-martial. Throughout the opinion, she will be referred to as CPL AK.

## THE PRETRIAL MIL. R. EVID. 513 LITIGATION[4]

Prior to trial, defense counsel moved for the military judge to conduct an in camera review of CPL AK's mental health records. The defense argued that CPL AK might suffer from a condition that impacted her "credibility" and "ability to recount events accurately," and that they were "constitutionally required" pursuant to Mil. R. Evid. 513 and the Confrontation Clause of the Sixth Amendment.

In support of the defense motion, the defense submitted two screenshots of CPL AK's digital medical records and an affidavit from Dr. Keppler, an Army psychiatrist appointed as a defense expert consultant. The defense also called Dr. Keppler to testify at the motions hearing.

The screenshots were provided to the defense anonymously, left at the civilian defense counsel's office in a sealed envelope.[5] The defense provided copies of the screenshots to the government. Screenshot 1 contains patient notes and references a prescription medication, Rx-1. Screenshot 2 lists medical and mental health diagnoses, labeled "problems." Both reference a mental health disorder, Condition-A. Corporal AK did not provide a Health Insurance Portability and Accountability Act (HIPAA)[6] release for her medical records, including the screenshots. At the time of trial, CPL AK continued to assert her Mil. R. Evid. 513 privilege.

---

[4] Consistent with Mil. R. Evid. 513(e)(6), the "[pretrial] motions, related papers, and the record of the hearing [were] sealed in accordance with R.C.M. 1103A." Our decision avoids unnecessary disclosure of CPL AK's medical records out of concern for her privacy, which was invaded through a HIPPA violation. This decision avoids disclosure of any specific diagnosis made or medication prescribed not because they are privileged, but because disclosure of either is unnecessary to resolution of the Mil. R. Evid. 513 assignment of error.

[5] The envelope's return address stated, in part: "JBLM Concerned Bystander."

[6] HIPPA is a federal law that protects against the unauthorized disclosure or transmission of all "individually identifiable health information" by a HIPAA covered entity. The term "individually identifiable health information" means any information, including demographic information collected from an individual, that— (A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual. 42 USC § 1320d(6) (2018).

An investigation into the unauthorized release and HIPAA violation[7] narrowed the list of those who accessed CPL AK's records during the relevant period, without a medical need to know, to three persons, one of whom was appellant's wife. On four occasions, appellant's wife, herself an active duty medic, without authorization, accessed CPL AK's medical records, including the digital records captured in Screenshots 1 and 2.

During the motions session, the defense argued that an in camera review of CPL AK's mental health records was necessary to address Condition-B, a mental health condition that can impact credibility and ability to recall. However, the defense offered no evidence that CPL AK suffered from Condition-B, and it was not mentioned in Screenshots 1 and 2. Although Screenshots 1 and 2 mentioned *Condition-A*, Dr. Keppler testified that the references to Condition-A could indicate *either the presence or absence* of the condition, so he could not conclude that CPL AK suffered from Condition-A. Further, while those suffering from Condition-A *could* also suffer from Condition-B, a diagnosis of the former was not evidence of the latter. Although Screenshot 1 mentioned Rx-1, Dr. Keppler testified that the medicine would not be prescribed to someone for Condition-A.

In denying the defense motion, the military judge ruled, "the use of improperly, if not illegally, obtained evidence as a basis to establish a need to disclose evidence under [Mil. R. Evid.] 513 [is] exactly contrary to [the] purpose of the rule. The materials in the possession of the Defense retains [sic] its privileged nature." Having found Screenshots 1 and 2 privileged, the military judge denied the defense's Mil. R. Evid. 513 motion, concluding "[t]he Defense may not use the improperly disclosed materials, regardless of who possesses them, for any purpose."

The military judge went on, however, to rule in the alternative: even considering the "privileged" materials, the defense failed to show "a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege."[8] *See* Mil. R.

---

[7] A knowing violation of HIPAA, which includes obtaining "individually identifiable health information relating to an individual" or disclosing "individually identifiable health information to another person" is subject to criminal prosecution, exposing the offender to a fine of $50,000 to $250,000, imprisonment in the range of one to ten years, or both. *See* 42 U.S.C. § 1320d-6 (2018).

[8] The military judge also found the defense failed to meet the requirement of Mil. R. Evid. 513(e)(3)(C)—that the information sought is "not cumulative from information available from other sources." Having found the military judge did not abuse his

(continued . . .)

Evid. 513 (e)(3)(A). Therefore, the military judge ruled, "no disclosure or in camera review is required."

## LAW AND DISCUSSION – DENIAL OF AN IN CAMERA REVIEW

Appellant alleges the military judge erred by failing to conduct an in camera review of CPL AK's mental health records or, in the alternative, abate the proceedings if CPL AK did not agree to the production of her mental health records. We disagree. Contrary to the military judge's conclusion, we find the records proffered by the defense were not privileged. However, we affirm the military judge's denial of the defense motion for the reasons noted below.

### A. What constitutes a "Confidential Communication" under Mil. R. Evid. 513?

We take this opportunity to clarify the meaning of "confidential communication" pursuant to Mil. R. Evid. 513. As a threshold matter, the military judge had to determine whether Screenshots 1 and 2 were privileged, as they were the factual foundation offered by the defense counsel in support of their motion.

Mil. R. Evid. 513(a) provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to a psychotherapist, in a case arising under the UCMJ, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Whether a diagnosis or prescribed medication is privileged under Mil. R. Evid. 513 is a question that has not yet been directly addressed by our superior court. However, the Coast Guard addressed this question in *H.V. v. Kitchen.* 75 M.J. 717, 2016 CCA LEXIS 395 (C.G. Ct. Crim App. 2016) (2-1 decision) (Bruce, R., dissenting).

We find Judge Bruce's dissenting opinion in *Kitchen* most illustrative:

> A diagnosis, prescribed medications, and other treatments
> are matters of fact that exist independent of any

---

(. . . continued)
discretion in denying the defense motion as it fails Mil. R. Evid. 513(e)(3)(A), we need not and do not address the validity of the military judge's ruling as it relates to Mil. R. Evid 513(e)(3)(C).

> communications between the patient and the
> psychotherapist. . . . The facts that there was a diagnosis,
> that medications were prescribed, or that other treatments
> were given, exist regardless of whether or to what extent
> they were discussed with the patient." *See H.V. v.
> Kitchen*, 75 M.J. 717, 721, 2016 CCA LEXIS 395 (C.G.
> Ct. Crim App. 2016) (2-1 decision) (Bruce, R.,
> dissenting). A prescription, by its very nature, is intended
> to be disclosed to a third party (i.e., the pharmacist who
> fills the prescription).

*Kitchen*, 75 M.J. at 721. Adopting a plain language approach to the Mil. R. Evid. 513 privilege, Judge Bruce deftly highlighted "the rule protects 'communication' 'made for the purpose of facilitating diagnosis or treatment,' not *including* diagnosis and treatment.'" *Id.* at 721. Had the President wished to broaden the category of information that would be privileged under Mil. R. Evid. 513, he could have included diagnosis and treatment in the plain language of the rule. As the words "diagnosis" and "treatment" appear in the rule, we cannot conclude that the President merely overlooked the issue of whether a diagnosis or treatment constitutes a "confidential communication." Instead, we concur with the lone dissenting Judge Bruce that the Mil. R. Evid. 513 privilege extends to statements and records that reveal the substance of conversations that may have been for the "purpose of facilitating diagnosis or treatment," but not to the diagnosis or treatment itself.

Screenshots 1 and 2 contain a list of medical and mental health "problems," or diagnoses, and a list of prescription medications. A list of medical and mental health "problems" does not contain any "confidential communications," though privileged communications may have prompted evaluation for those diagnoses. Likewise, a list of prescription medications does not contain "confidential communications," though privileged communications may have *facilitated* a psychotherapist's prescription for a particular medication. A prescription, by its very nature, is intended to be disclosed to a non-psychotherapist third party—the pharmacist who fills it—which further informs our opinion that the medications prescribed to a person are not privileged "confidential communications."

The fact that Screenshots 1 and 2 were illegally obtained in violation of HIPAA does not expand the psychotherapist-patient privilege created by the President. HIPAA protects against disclosure of a much broader category of medical information than the confidential communications that are privileged under Mil. R. Evid. 513. The military judge was correct that *privileged* information could not be used to establish the factual foundation for an in camera review of mental health records. But his ruling conflates the Mil. R. Evid. 513 privilege with HIPAA protection. While the medical records were no doubt protected under HIPAA and

should not have been disclosed without CPL AK's consent, we find Screenshots 1 and 2 were not privileged under Mil. R. Evid. 513, and the military judge erred in his conclusion that they were. Because the records in question are not privileged, we consider them, as the military judge did, in our Mil. R. Evid. 513 analysis.[9]

*B. The Defense's Burden to Establish Entitlement to an In Camera Review*

A military judge's ruling on a discovery or production request is reviewed for an abuse of discretion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004).

Congress codified four prerequisite showings that must be made before a military judge may conduct an in camera review of privileged matters. As the movant, appellant bore the burden of establishing:

> (A) a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege;
> (B) that the requested information meets one of the enumerated exceptions under [Mil. R. Evid. 513(d)];
> (C) that the information sought is not merely cumulative of other information available; and
> (D) that the party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources.

Mil. R. Evid. 513(e)(3).

We agree with the military judge that appellant failed to establish the first prong of Mil. R. Evid. 513(e)(3)[10] and therefore, he was not entitled to an in camera review of CPL AK's mental health records.

---

[9] If the military judge had been correct in his determination that Screenshots 1 and 2 were privileged, he should *not* have considered them in his determination of the defense's motion to conduct an in camera review of CPL AK's mental health records.

[10] The military judge also found defense failed to meet the third prong of Mil. R. Evid. 513(e)(3), a showing "that the information sought is not merely cumulative of other information available." Mil. R. Evid. 513(e)(3)(C). Having found the military

(continued . . .)

The defense argued that CPL AK's records were relevant to CPL AK's "credibility" and "ability to recount events accurately." The defense tied this assertion to a specified mental health diagnosis, Condition-B. However, the evidence presented, to include the screenshots of CPL AK's medical records, mentioned a potential diagnosis of a different condition, Condition-A. While those that suffer from Condition-A could also suffer from Condition-B, the former is not proof of the latter, according to the defense's own expert.

The defense also attempted to link CPL AK to Condition-B by reference to Rx-1. However, the medication is not prescribed to treat either Condition-A or Condition-B. In short, the defense was on a "proverbial fishing expedition." *United States v. Chisum*, 75 M.J. 943, 948 (A.F. Ct. Crim. App. 2016).

We find the military judge did not abuse his discretion in denying the defense motion. The defense failed to establish "a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege." Mil. R. Evid. 513(e)(3)(A). While we have little doubt that defense counsel in criminal cases would like, as Dr. Keppler put it, to "explore the underlying psychopathology at work in the complainant," Mil. R. Evid. 513 is a rule of privilege, not exploration.

### C. Neither Brady nor the Confrontation Clause Entitles Appellant to an In-Camera Review of CPL AK's Mental Health Records

In addition to arguing the military judge erred in refusing to conduct an in-camera review, appellant argues that the evidence in question was discoverable under *Brady*.[11] We disagree. "[F]or *Brady* purposes, information under the control of the 'prosecution' is not the same as information under the control of the entire government." *United States v. Shorts*, 76 M.J. 523, 532 (Army Ct. Crim. App. 2017). Privileged information stored in a hospital's system of records is not within the possession or control of the "prosecution" for *Brady* purposes. "Mental health records located in military or civilian healthcare facilities that have not been made part of the investigation are not 'in the possession of prosecution' and therefore cannot be 'Brady evidence.'" *Lk v. Acosta*, 76 M.J. 611, 616 (Army Ct. Crim. App. 2017).

---

(. . . continued)
judge did not abuse his discretion in his Mil. R. Evid. 513(e)(3)(A) finding, we need not and do not address the validity of the military judge's ruling as it relates to Mil. R. Evid 513(e)(3)(C).

[11] *See generally Brady v. Maryland*, 373 U.S. 83 (1963) (requiring the government to disclose to the defense certain information (i.e., evidence that is material and favorable to the defense) in the possession of the prosecution).

Finally, appellant argues:

> [R]egardless of other evidentiary or relevance burdens, it was error for the military judge to preclude the defense expert from considering the records in forming his opinion. In fact, on its face the military judge's ruling precluded the defense from even conducting further investigation based upon the records, denying the Appellant the effective assistance of counsel. This ruling was simply outside of the military judge's authority and denied the Appellant his Sixth Amendment confrontation right.

We disagree. The military judge issued a protective order to prevent "unnecessary disclosure of evidence of a patient's records or communications." Though the screenshots are not privileged, their unauthorized disclosure constitutes a criminal violation of HIPAA. The military judge acted within his authority to regulate discovery when he issued the protective order. *See generally* Rule for Courts-Martial (R.C.M.) 701(g)(2). The order did not abridge appellant's constitutional rights. Appellant's Sixth Amendment right to confront witnesses against him is a *trial right*, not a discovery right. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987). The right to confront witnesses does not include the right to discover information to use in confrontation. *Id.*

Appellant has failed to establish that he was prejudiced by the military judge's order denying his use of the information for any purpose. We find no abuse of discretion in the order and, more importantly, we find appellant suffered no material prejudice to a substantial right as a result of said order. *See* Article 59(a), UCMJ.

## LIEUTENANT COLONEL CF'S SERVICE ON THE PANEL

### A. Voir Dire

During group voir dire, the military judge posed the 28 standard group voir dire questions, to include: "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to the ones charged in this case?" *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 2-5-1 (10 September 2014). All members except for LTC CF responded in the negative. When asked by the military judge, "do you believe that that experience would influence the performance of your duties as a court member in this case in any way?", LTC CF responded, "No, sir." Following the military judge's questioning of the group, the trial counsel asked 18 additional questions. Finally, trial defense counsel asked the group another 56 questions. The defense counsel's questions covered a range of topics including, *inter alia*: the members' relationships with government counsel, the convening authority and each other;

prior experience with and personal views on sexual assault; previous involvement with victim advocates and law enforcement; preexisting notions regarding both suspects' and alleged victims' behavior; and, prior experience sitting on a court-martial panel.

During defense counsel's group voir dire, five of the ten members, including LTC CF, indicated they previously sat on a panel in a sexual assault case. During individual voir dire, a sixth member explained that he also served as a panel member on a sexual assault case. Considering the members' responses during group voir dire and the answers they provided in written questionnaires, trial defense counsel requested and conducted individual voir dire of all ten members.

During individual voir dire of LTC CF, trial defense counsel asked LTC CF to elaborate on his affirmative response to whether a family member or someone close to him was a victim of an offense similar to those charged. The following colloquy occurred:

Q. Sir, I believe you answered affirmatively whether there'd been a family member or someone close to you that was a victim of a similar offense, is that correct?

A. That's correct.

Q. I'm sorry to have to delve into this, but could you describe in general what you're speaking, sir.

A. It was my spouse. It was a number of years ago, but there were multiple instances in which she was a victim of, I'll say sexual assault, however you want to characterize it, it still has significant impacts today.

Q. Sir, the crime we're talking about, did that take place many years ago?

A. Yes. We've been married for 13 years, probably closer to 20 years ago.

Q. Did that offense come to light before you knew your wife?

A. No. It was afterwards.

Q. Were you involved in any way with investigative efforts or anything like that?

10

A. No.

Q. Was there any law enforcement involved in it or anything of that nature?

A. No.

Q. In the aftermath of an offense like that, I think you've alluded to that there's impacts and things of that nature. Do you believe that would color your ability to sit in a sexual offense case----

A. No.

Q. ----or prevent you--could you describe your thought process on that, sir?

A. I'd make sure to be fair. At least, I believe, I'm fair and will look at the evidence based on the merits. I don't come here with any preconceived notions regarding the case one way or the other.

Q. The perpetrator of that offense against your wife, was that a family member or a stranger?

A. It was an acquaintance of hers.

Counsel then transitioned to LTC CF's experience as a member on a prior sexual assault court-martial. He explained that he had sat on a court-martial panel in a sexual assault case in January of that year. Lieutenant Colonel CF said nothing from the experience stood out in his memory and he was committed to considering the evidence in the case and following the law provided by the military judge.

The government challenged for cause two of the panel members. The defense did not object and the military judge granted both challenges. The defense did not assert any causal challenges. Both the government and defense exercised their peremptory challenge, which the military judge granted. After the exercise of challenges, the panel consisted of six members, three of whom had previously served as members in sexual assault cases.

*B. Lieutenant Colonel CF's Questions at Trial*

During the course of trial, LTC CF submitted six questions that were marked as appellate exhibits. He directed questions at two NCO supervisors of CPL AK, an expert witness testifying in the field of forensic biology, and a medical doctor testifying about sexual assault forensic examinations. Most notably, during

deliberation, the panel president requested that the court be called to order so that the military judge could be presented with LTC CF's final question: "May we have a transcript of CPL [AK's] testimony." As the typed transcript of the testimony was not yet available, LTC CF's question prompted the military judge to replay part of CPL AK's recorded testimony. After the members heard the portion of the recorded testimony requested, they returned to their deliberations.

### LAW AND DISCUSSION – THE DEFENSE'S DECISION NOT TO CHALLENGE LIEUTENANT COLONEL CF

Appellant asserts he was denied his Sixth Amendment right to effective assistance of counsel because his defense counsel failed to challenge for cause LTC CF, a member whose wife had been a victim of a sexual offense. Appellant characterizes defense counsel's "failure to challenge LTC F [as] an unreasonable omission [ ] especially since the challenge would have been granted under the 'liberal grant mandate,'" noting that that "a challenge for cause based on implied bias would have been successful." We disagree and conclude for the reasons below that appellant is entitled to no relief.

First, absent plain error, appellant's decision at trial not to challenge LTC CF as a member of the court waives any issue regarding his participation on the court. Further, appellant has failed to meet his burden to establish he was denied effective assistance of counsel, establishing neither deficiency by defense counsel's decision not to challenge LTC CF for cause nor prejudice by LTC CF's membership on the court.

### A. The Burden to Bring Challenges and Waiver

"The purpose of voir dire and challenges is, in part, to ferret out facts, to make conclusions about the members' sincerity, and to adjudicate the members' ability to sit as part of a fair and impartial panel." *United States v. Bragg*, 66 M.J. 325, 327 (C.A.A.F. 2008).

Rule for Courts-Martial 912(f)(3) states, in part: "The party making a challenge shall state the grounds for it. . . . The burden of establishing that grounds for a challenge exists is upon the party making the challenge." *United States v. Napoleon*, 46 M.J. 279, 283 (1997). Rule for Courts-Martial 912(f)(2)(4) states, in part: "[m]embership of enlisted members in the same unit as the accused and any other ground for challenge is waived if the party knew of or could have discovered by the exercise of diligence the ground for challenge and failed to raise it in a timely manner." *See also United States v. Lopez*, 37 M.J. 702, 705 (Army Ct. Crim. App. 1993).

Absent a clear showing of specific prejudice, "or where application of waiver would result in a miscarriage of justice," failure to challenge a member at trial constitutes waiver of that issue on appeal. *United States v. Wilson*, 21 M.J. 193, 197 (C.M.A. 1986). "Allowing appellate defense counsel to label a decision not to challenge court members as 'ineffective assistance of counsel,' would . . . defeat the longstanding waiver rule for challenges . . . ." *United States v. Travels*, 47 M.J. 596, 598 (A.F. Ct. Crim. App. 1997).

We agree with the Air Force court and "find that when, as here, detailed voir dire is conducted by the defense counsel, counsel's subsequent failure to challenge a member is a tactical decision which waives any ground for challenge revealed by voir dire." *Travels*, 47 M.J. at 598. Appellant cannot strategically decline to assert a challenge during voir dire and then complain of the inaction on appeal in order to revive an issue he previously waived. Appellant's allegation is a poor attempt at appellate "CPR," but new life cannot be breathed into legal issues previously waived by calling his counsel ineffective.

Notwithstanding our finding of waiver, we will review counsel's "inaction" under the framework for ineffective assistance of counsel, a review that similarly results in no relief for appellant.

### B. Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687(1984)). We review both deficiency and prejudice de novo. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citing *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008)). Appellant's claim fails on both counts.

To establish deficient performance, appellant must show that his counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). In order to establish prejudice, appellant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Green*, 68 M.J. at 362 (citing *Strickland*, 466 U.S. at 698).

13

*1. No Deficiency*

Any analysis of appellant's ineffective assistance of counsel claim necessarily requires an assessment of whether appellant had a viable challenge for cause against LTC CF. Defense counsel's performance cannot be called "deficient" for declining to make a challenge that would not have been successful.

"'A military judge's ruling on a challenge for cause is reviewed for an abuse of discretion.'" *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (citations omitted). "The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law." *United States v. Wood*, 299 U.S. 123, 133 (1936).

"Actual bias [is defined] as 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Ai*, 49 M.J. 1, 5 (1998) (internal quotations omitted). "The test for actual bias [in each case] is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *United States v. Napoleon*, 46 M.J. 279, 283 (1997) (internal quotations omitted). "There is implied bias when most people in the same position would be prejudiced." *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999) (internal quotations omitted). Implied bias is "evaluated objectively under the totality of the circumstances and through the eyes of the public, reviewing the perception or appearance of fairness of the military justice system." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (citations and quotations omitted).

Appellant argues that implied bias exists when a family member is the victim of a similar crime. Our superior court disagrees, as do we. It is well established that "[a] prior connection to a crime similar to the one being tried before the court-martial is not per se disqualifying to a member's service." *United States v. Terry*, 64 M.J. 295, 297 (C.A.A.F. 2007); *see also United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (a member is not per se disqualified because [the member] or a close relative has been a victim of a similar crime.).

In *Terry*, the Court of Appeals for the Armed Forces (C.A.A.F.) concluded it was error for the military judge to deny a challenge for cause against a member whose "experience with rape was pronounced and distinct." 64 M.J. at 297. The member's longtime girlfriend whom he intended to marry had been raped, a rape that resulted in her pregnancy. *Id.* The member's longtime girlfriend broke off their relationship because she "felt unworthy" of being with him after the rape. *Id.* at 300. Despite being a support system for the rape victim, the rape ultimately led to the end of the relationship, changing the course of the member's life. Lieutenant Colonel CF's experience with his wife's sexual assault is distinguishable.

Lieutenant Colonel CF appeared to know few details of his wife's 20-year-old sexual assault. The crime occurred before he married his wife and it did not derail their lives together, as the rape did to the challenged member in *Terry*. Mere knowledge of his wife's experience as a sexual assault victim and an acknowledgement that it continues to impact her, albeit significantly, does not amount to a "pronounced and distinct" personal experience with a crime similar to those charged.

To agree with appellant's allegation that he received ineffective assistance of counsel, this court would have to find that defense counsel are per se ineffective when they choose not to challenge a member that reports a personal experience with a crime similar to those charged. Such a holding would fly in the face of the longstanding premise that a prior connection to a crime similar to the one being tried before the court-martial is not per se disqualifying to a member's service on a panel. *See Terry*, 64 M.J. at 297. Imposing such a rule would also trample on the necessary strategic autonomy exercised by defense counsel in the presentation of an accused's defense. Our superior court recognized that military judges are "specially suited" to determine challenges because, unlike a reviewing court that is not physically present, military judges have observed a challenged member's demeanor during voir dire. *Id*. at 302. Similarly, we find a trial defense counsel is best poised to determine whether to challenge panel members, as she observes each member, converses directly with them during individual voir dire, and reads their pretrial questionnaires, which are not part of the appellate record.

During individual voir dire, LTC CF's colloquy with the defense counsel provides insight into his fairmindedness and impartiality. Rather than simply giving affirmative or negative responses to defense counsel's queries, LTC CF delivered an unsolicited monologue about his intent to fairly decide the case on its merits. Lieutenant Colonel CF noted, "I'd make sure to be fair. At least, I believe, I'm fair and will look at the evidence based on the merits. I don't come here with any preconceived notions regarding the case one way or the other." There were no leading questions posed to suggest to LTC CF that he should dutifully set aside his wife's personal experience in order to sit as an unbiased member; he freely articulated his intent to do so in his own words.

Appellant has failed to support his allegation against his defense counsel. He could have provided an affidavit explaining that he noticed something off-putting about LTC CF's demeanor and expressions in court. He could have explained that he was uncomfortable having LTC CF on his panel and had in fact expressed that concern to his defense team. The absence of any affidavit from appellant's speaks volumes. Because he did not, we must assume that he did not personally notice anything noteworthy about LTC CF during voir dire that would have caused him to request that the member be challenged. Likewise, if there were disturbing answers contained in LTC CF's pretrial questionnaire, appellant did not move to attach it to

the appellate record to support his bold assertion that a challenge against LTC CF would have been successful and should have been made by his counsel.

We do not find that appellant's counsel were deficient in their decision not to challenge LTC CF because appellant has failed to demonstrate a challenge for cause against LTC CF would have been successful.

### 2. No Prejudice

We need not address prejudice, as we find no deficiency in defense counsel's performance. However, we turn to the second prong of the *Strickland* analysis to point out that appellant has failed to even allege any prejudice, let alone support such a claim. Instead, appellant presumes prejudice, as if the failure to challenge a member automatically creates a reasonable probability of a different result sufficient to create serious doubt as to the outcome of the trial. Appellant would like us to treat his ineffective assistance of counsel allegation as structural error, one that "affects the framework within which the trial proceeds," such that it "defies analysis by harmless error standards." *Weaver v.* Massachusetts, 137 S. Ct. 1899, 1907-08 (2017) (citations omitted). But assuming we agreed with appellant that his counsel was deficient for failing to challenge LTC CF, appellant still bears the burden of showing how that prejudiced him at trial. The findings reached by the panel and LTC CF's behavior during trial make us confident that the defense counsel's decision not to challenge LTC CF did not prejudice appellant.

First, the panel acquitted appellant of rape, the gravamen offense. Even if LTC CF harbored some bias due to his wife's status as a victim of sexual assault, appellant's acquittal cuts against the contention that the failure to challenge LTC CF prejudiced appellant. Second, we have considered that LTC CF posed six thoughtful questions during the course of trial that were directed at a variety of witnesses. His questions demonstrate a focused attention to the evidence presented at trial and a personal desire to understand the testimony of the witnesses, including expert witnesses. Even during deliberation, LTC CF asked to reexamine CPL AK's testimony, which supports the conclusion that he was a thoughtful deliberator, not a biased husband. Despite his wife's personal experience with sexual assault, LTC CF did not exhibit a biased attitude or inelastic disposition.

Appellant's lead defense counsel conducted a thorough group voir dire and individual voir dire with every member. She gained insight from personal conversations with each member. Viewing the record as a whole, we conclude that appellant's defense team conducted a strategically savy voir dire and simply made a tactical decision not to challenge LTC CF for cause after hearing his answers and observing his affect and behavior. Notwithstanding our conclusion that appellant waived the issue of challenging LTC CF, defense counsel's decision not to challenge LTC CF did not constitute ineffective assistance of counsel.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court